1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **ANTHONY JACKSON,** )<br>)<br>          **Petitioner,**       )<br>)<br>**vs.**                                           )<br>)<br>**WARDEN STERNS, et al.**      )<br>)<br>          **Respondents.**       )<br>_____ ) | **No. CV 05-02496-PCT-MHM [CRP]**<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Anthony Jackson petitions this Court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that his lawyer provided ineffective assistance of counsel at sentencing. Respondents oppose the Petition. This Court recommends that District Judge Murguia enter an order denying the Petition.

Jackson was originally charged with first-degree murder, kidnapping and armed robbery. In a written plea agreement, Jackson agreed to plead guilty to the reduced charge of second degree murder, the State agreeing to dismiss the kidnaping and armed robbery charges. There was no agreement as to sentencing, but the Stipulated Guilty Plea correctly reflected the statutory sentencing range to be ten to twenty-two calendar years, with a presumptive term of sixteen years imprisonment. Ex. B.[1]  Judge Pro Tempore Richard Weiss, Mohave County Superior Court, sentenced Jackson to an aggravated term of eighteen years in prison on September 4, 2001. Ex. I and J.

Jackson timely filed his of-right petition for post-conviction relief with the state court. Judge Weiss ultimately denied the petition, as did the Arizona Court of Appeals and Arizona

---

[1] The tabbed exhibits to the Answer to Petition For Writ of Habeas Corpus will be cited as "Ex. ___."

1  Supreme Court in succession, the conviction becoming final on August 20, 2004. At all three
2  levels of the state court proceedings, Jackson complained, *inter alia*, that his attorney
3  provided ineffective assistance of counsel at sentencing, citing *Strickland v. Washington*, 466
4  U.S. 668, 104 S.Ct. 2052 (1884). The Petition in this case was filed on August 18, 2005.

Respondents concede that the Petition is timely and that his claim was properly exhausted in state court. Answer, p.2.

In his only ground for relief, Jackson acknowledges that Judge Weiss found four aggravating factors and only one mitigating factor. Nonetheless, Jackson argues Judge Weiss would have found his attention deficit disorder to be a mitigating factor had his attorney told the judge "how and why to use it." Petition, p.5. Instead, according to Jackson, his attorney told Judge Weiss, "time and again 'do not accept Mr. Jackson's "ADD"'."

Jackson's attorney on appeal, in the of-right PCR Petition, argued that "defense counsel was ineffective at sentencing by repeatedly stating that he could not fit evidence into any specific mitigating factor."[2] Ex. K, p.5. The Petitioner continued to argue:

> This evidence did support the finding of Mr. Jackson's low IQ as a factor which the court should have considered to mitigate punishment. *State v. Fiero*, 166 Ariz. At 553.

Ex. K, p.5-6. This statement is the only suggestion, such as it is, of what defense counsel should have done. Moreover, this statement is a mere reiteration of the first basis for relief in the state PCR petition, that the court should have found Jackson's borderline IQ and ADD to be a mitigating factor. Ex. K, pp.2-4. Jackson does not challenge how his trial attorney presented the evidence on this subject, but only complains of how he argued it.

Jackson was represented at his change of plea and sentencing by Thomas Kehm. Kehm was worried that because of Jackson's prior felony convictions, he would receive the statutory maximum sentence of twenty-two calendar years. Ex. F., Rule 26.5. Examination by Michael Arcuri, M.D., p.2. Kehm was extremely diligent in the sentencing process, and achieved an excellent outcome for his client.

At the beginning of the change of plea hearing, Kehm advised the court he would be

---

[2]Citing to R.T. 9/4/01 at 5, 7-10, 12, 31.

- 2 -

1  requesting a mental health diagnostic evaluation, that he had already discussed this with the
2  prosecutor and there was no objection. Ex. D., p.2. On May 16, 2001, the trial court granted
3  Kehm's Motion For Diagnostic Evaluation and Mental Health Examination, appointing Dr.
4  Arcuri. Ex. E. Dr. Arcuri submitted his report, which was largely unfavorable to Jackson.
5  Ex. F. Specifically, Dr. Arcuri concluded:

> (I)t appears (Jackson) is likely to engage in criminal activity in the future, since his criminal activity has not been as a result of a treatable mental disorder, such as Bipolar Illness, but has arisen as a result of his personality.

Ex. F., p.7. Dr. Arcuri did consider Jackson's suicide attempts in jail, his ADD and borderline intellectual functioning. Ex. F, p.3-4. Nonetheless, Dr. Arcuri concluded Jackson "is not psychotic, not severely depressed, nor suffering from an organic mental syndrome." Ex. F, p.5.

A hearing in connection with the sentencing was held on August 10, 2001. Ex. G. Apparently, Judge Weiss had continued the sentencing because of a jury trial he was conducting, but at Mr. Kehm's request, set this hearing to preserve the testimony of Jackson's adoptive mother, Janet Marie Bast. Ex. E, p.3. Mrs. Bast had traveled from Minnesota and would not have been able to be present at the rescheduled sentencing. Mrs. Bast testified extensively about her observations of Jackson's emotional and mental health problems as a child. Ex. C.

A pre-sentence investigative report was filed with the court on September 4, 2001. This report contained information about Jackson's ADD, history of special education, and other mental health issues. Ex. H, pp.8-9. The report also stated the facts of the murder. Jackson worked at Dream Girls in Mohave County, Arizona. He was directed to drive a patron, Robert Grant, back to the casino in Laughlin where he was staying. Jackson brought along a friend, Alex Eishoo. Both Jackson and Eishoo knew Grant was carrying approximately $10,000 in cash. While Jackson drove, Eishoo strangled Grant. Jackson helped dispose of the body and accepted several thousand dollars of the money taken from Grant. Ex. H, pp.2-7.

1    Jackson was sentenced on September 4, 2001. Minute Entry, Ex. I; Transcript, Ex. J. In addition to requesting the Rule 26.5 evaluation and preserving Janet Bast's detailed testimony about Jackson's ADD and special education issues, Kehm moved for a neurological examination, but Judge Weiss denied this request. Ex. J, p.3.

Kehm argued at length for a mitigated sentence. Kehm acknowledged that Jackson's mental and emotional issues did not "fit the classic handles" (Ex. J, p.5) and are hard to "pigeon-hole" within the mitigating factors set forth in A.R.S. § 13-702(D). (Ex. J, p.8). Nonetheless, Kehm argues Janet Bast's testimony and subsequent letter to the court at length. Moreover, Kehm referred to the only mitigation basis he had in the statute, the catch-all provision of A.R.S. § 13-702(D)(5). Ex. J, p.8, ll.8-11.

The prosecution urged the court to reject Janet Bast's testimony and consider Dr. Arcuri report. Ex. J, p.29. The state also responded to Kehm's arguments about his client's mental and emotional challenges by remarking on how much support and specialized services Jackson received as a child. Ex. J, p.23. Kehm had clearly put this issue in play at sentencing and the mental and emotional background of the defendant was a main focus of argument at sentencing.

The prosecutor asked for the statutory maximum sentence of 22 years. Ex. J, p.29. Kehm asked the judge for a mitigated sentence, or nothing more than the presumptive sentence of 16 years. Ex. J, p.32. Judge Weiss, finding four aggravated factors and one mitigating factor, that Jackson was a follower, sentenced the defendant to an aggravated term of 18 years. Ex. J, p.37.

To establish a Sixth Amendment violation for ineffective assistance of counsel, Jackson must establish that Kehm's performance was deficient, below an objective standard of reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 2064 (1984). Secondly, Jackson must show that the deficient performance prejudiced him at sentencing. *Id.* Jackson cannot establish either element of the *Strickland* holding.

In this case, Kehm was consistently diligent. Kehm requested a mental health

- 4 -

1 evaluation from the start, preserved Janet Bast's testimony, requested a neurological
2 examination, and argued aggressively for a mitigated sentence. Jackson complains of
3 Kehm's repeated references to the fact that the emotional and mental health information
4 about Jackson that was adduced did not neatly fit within any of the mitigation elements of
5 § 13-702. Neither Jackson nor his state appellate attorney suggest what statutory mitigating
6 factor should have been argued. Kehm argued the only one he had a shot at, the "catch-all"
7 provision. This Court must "indulge a strong presumption that counsel's conduct falls within
8 a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct.
9 At 2065. Here it seems clear that Kehm's concession of the obvious was done to preserve
10 or bolster his credibility with the court. This is a reasonable strategic decision on Kehm's
11 part, and combined with his diligence and effectiveness in presenting the facts and making
12 Jackson's ADD and below average intelligence a central point in the fight at sentencing, it
13 is clear that the sentencing proceeding was very fair and Jackson was quite ably represented.

15 Additionally, Jackson cannot show prejudice. He was sentenced barely above the
16 presumptive sentence of sixteen years even though the crime was quite violent and for
17 pecuniary purposes and despite Jackson's prior felony convictions for theft and inflicting a
18 head injury to a child in his care. Jackson's sentence easily could have been the maximum.
19 It is difficult to imagine how Jackson could have received anything other than an aggravated
20 sentence. Even had Kehm's arguments fallen below the objective standard of reasonable
21 advocacy, Jackson cannot show he was prejudiced since he only received a barely aggravated
22 sentence of eighteen years.
23 WHEREFORE, IT IS THE REPORT AND RECOMMENDATION OF THIS COURT that District
24 Judge Murguia, after her independent review and consideration, enter an order DENYING the
25 Petition.
26 Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within
27 10 days of being served with a copy of this Report and Recommendation. If objections are
28 not timely filed, the party's right to *de novo* review may be waived. *See United States v.*

- 5 -

1 *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900
2 (2003). If objections are filed, the parties should use the following case number: **CV 05-**
3 **02496-PCT-MHM.**
4     The Clerk of the Court is directed to send a copy of this Report and Recommendation
5 to all parties.
6     DATED this 7th day of March, 2008.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE